UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10937 GAO

| | |
|---|---|
| JOHN DOE, a minor, by and through his father and next friend, JAMES DOE, <br><br>Plaintiffs <br><br>v. <br><br>MYSTIC VALLEY REGIONAL CHARTER SCHOOL, <br><br>Defendant | AMENDED COMPLAINT |

## INTRODUCTION

1. This is a civil action against the Mystic Valley Regional Charter School to secure an award of attorneys' fees and costs incurred in an administrative action at the Massachusetts Department of Education, Bureau of Special Education Appeals, in which the plaintiffs succeeded in enforcing the rights of John Doe pursuant to Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794).

## JURISDICTION

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 29 U.S.C. §794 and §794a.o

3. Plaintiffs seek an award of attorney fees pursuant to 29 U.S.C. § 794a(b).

4.   Venue for this action lies in this District pursuant to 28 U.S.C. § 1391(b). All of the events or omissions giving rise to Plaintiffs' claims occurred here and the Defendants may be found here.

## PARTIES

5.   The plaintiff, JAMES DOE ("JAMES DOE"), is an adult individual who resides in maintains a permanent residence in Melrose, Middlesex County, Massachusetts, who brings this action as next friend for his son, John Doe.

6.   The plaintiff, JOHN DOE ("JOHN"), is a minor individual who lives with his family in Melrose, Middlesex County, Massachusetts. The plaintiffs bring this action without publicly disclosing their last name in order to protect their privacy. The plaintiffs' identities are known to the defendants in this action.

7.   The defendant, Mystic Valley Regional Charter School ("Mystic Valley"), is established pursuant to the laws of Massachusetts and is a public corporation with a capacity to be sued, with an address in Malden, Middlesex County, Massachusetts. At all times material to this matter, John has been a student enrolled in the Mystic Valley Regional Charter School and Mystic Valley has been responsible for providing educational services, and aids, accommodations and modifications to John.

## STATEMENT OF FACTS

8. John is a seven year old boy, whose date of birth is January 18, 1997. He has attended Mystic Valley Charter School since enrolling in kindergarten for the 2002-2003 school. John suffers from severe and life threatening allergies to peanuts, and tree nuts. John also has been diagnosed with asthma.

9. John has a history of several allergic and anaphylactic reactions to peanuts and nuts, ranging from mild to severe. Anaphylaxis is a systemic reaction that can lead to cardiovascular collapse and death. Severe anaphylaxis is "a life-threatening reaction" which can cause severe swelling of the tissues of the upper airway, resulting in obstruction of breathing through the throat, blocking airflow in and out of the lungs. When the lower airways of the lungs narrow, shortness of breath, wheezing and asthma can occur, further compromising oxygenation. When the cardiovascular system of the body undergoes anaphylaxis, massive fluid leakage from blood vessels into tissue results in decreased blood pressure and shock. Seizures can result from lack of oxygen. The combination of obstructed breathing and lack of oxygen with loss of heart function and blood pressure is often fatal. Food allergies account for about 30,000 anaphylactic reactions, 2000 hospitalizations, and 200 deaths each year in the United States.

10. Ingestion of even tiny amounts of peanut and/or nut products by an allergic person can be fatal. Medical research has shown that ingestion of as little as one-fifth to one-tenth of a peanut can cause an allergic reaction. Allergic reactions can result from indirect contact with peanut products through cross contamination. Peanuts and tree nuts are the most lethal of the food allergies and are associated with fatal anaphylaxis more than any other food.

11. Schools are a high risk location for accidental peanut/nut ingestion. In a review of six fatal allergic reactions to foods in children and adolescents, five were caused by peanut or tree nuts and four of these occurred in school.

12. John's allergic and anaphylactic reactions have ranged from those where his discomfort was alleviated when he was removed from the presence of the peanut product (Fenway Park incident at age four and a October 3, 2003 incident in school) to a mild anaphylactic reaction involving skin irritation that was alleviated upon treatment with

antihistamines (3/1/1998 incident at age 13 months) to a severe, explosive, multi-systemic reaction that required an emergency room hospitalization, and the administration of epinephrine. (1/23/1999 incident at age two).

13. Following an examination of John at age 13 months, Dr. Joel Bleier, a Board Certified Allergist, conducted allergy skin testing which concluded that John was, indeed, allergic to peanuts. Dr. Bleier told parents to remove all peanut products from their home, stating that, "putting peanut products in your house with John is like putting John in a room with a loaded gun." In March, 2002, Dr. Bleier conducted additional allergy testing of John. These results revealed that John had developed additional allergies to tree nuts, including almonds, English Walnuts, pecans, Brazil nuts, cashews, and hazelnuts.

14. John was enrolled by his parents in the Mystic Valley Regional Charter School for kindergarten in August 2002. At that time his parents provided to the school, medical documentation from Dr. Bleier and pediatrician, Dr. Stuart Pergament dated 8/21/02 and 8/22/02 respectively. These letters each described John's allergies as "life-threatening" and the latter stated the risk of John suffering a fatal reaction from the ingestion of "minute amounts of peanut products (including airborne particles)." Both doctors emphasized the need for avoidance and Dr. Pergament instructed that "John should be in an environment completely free of peanut containing products."

15. Parents made concerted efforts to have Mystic Valley's administration educate John's service providers (classroom teacher, aides, etc.) about his food allergies before the start of classes in 2002. Parents' initial phone calls went unanswered and when Mystic Valley's Chris Finn finally returned Parents' call, he represented that John's food allergies would be addressed at an "orientation" to be held on August 19, 2002. On August 19, 2002, Parents attended the

"orientation" and John's food allergies were not mentioned so they met with and personally apprised John's kindergarten teacher about John's allergies on that date. John's teacher had received no information specifically about John's food allergies other than the information provided by Parents as of the start of classes on August 21, 2002.

16. At the request of Mystic Valley, Parents provided three additional letters from John's pediatrician, Dr. Paulette Gebhardt, dated 12/9/2002, 12/12/2002 and 1/29/2003, all stressing that John's allergies were life threatening and all indicating the medical need for him to be in a peanut-free classroom.

17. Mystic Valley did not provide a peanut-free classroom for John in spite of medical recommendations that such an environment was necessary for his safety.

18. Although Mystic Valley did not offer a peanut/nut free classroom for John, Dr. Anthony Biegler, Superintendent of the Mystic Valley Regional Charter School did send a letter to parents of students in John's class in August 2002, asking them not to send peanut products in with their children.

19. In spite of its request and of other parents' agreement to refrain from sending peanut products into the school, Mystic Valley continued to supply peanut butter sandwiches as an "alternate lunch" to all students without a lunch throughout the entire school year 2002-2003.

20. After repeated requests and an inquiry to the Untied States Department of Education Office of Civil Rights by the Parents, Mystic Valley did hold a meeting on November 15, 2002 to prepare a Section 504 accommodation plan for John. Mystic Valley refused to provide as an accommodation a prohibition on the consumption of peanut or tree nut products in John's classroom. John's parents accepted the plan in part but rejected it for this and other shortcomings.

21. After an effort to negotiate a resolution of these matters, Parents filed a request for hearing concerning this matter on April 30, 2003 with the Bureau of Special Education Appeals, the due process hearing body for the Commonwealth of Massachusetts on Section 504 claims involving public and charter schools.

22. On October 3, 2003, John was sent home by the school nurse with allergic conjunctivitis. Prior to his being sent home, John was seated at the desk immediately next a student eating peanut butter crackers for at least five minutes.

23. On March 19, 2004, Hearing Officer Rosa Figueroa, following four days of hearing, entered a decision, finding in favor of the Parents and ordering the Mystic Valley Regional Charter School to implement the following accommodations:

a. No peanut/tree nut products to be allowed in the Student's classroom;

b. All other accommodations accepted by Parents to continue to be implemented;

c. Child to have access to all classroom activities such as the celebration of Chinese New Year, accommodated accordingly, ie. no restaurant prepared food, food preparation not to include peanut oil, etc.

d. letter to parents of classmates must describe Student as a chills that has a "life-threatening allergy;" provide an informational session to Parents and additional training to staff timely;

e. provide an orientation to Student's classmates regarding Student's life-threatening peanut/tree allergy.

24. On or about March 31, 2004, counsel for the plaintiffs made a written demand for payment of attorneys' fees and related expenses by Mystic Valley. The parties have been unable to resolve this claim.

## COUNT I

## RECOVERY OF ATTORNEY FEES FOR ENFORCEMENT OF SECTION 504 of the REHABILITATION ACT OF 1973

25. Plaintiffs reallege the allegations set forth in paragraphs 1 through 47 and incorporate the same by reference as if fully set forth herein.

26. The proceeding before the BSEA was brought pursuant to Section 504 of the Rehabilitation Act of 1973, ("Section 504"), (29 U.S.C. §794).

27. Section 504 at §794(b), provides that in any action or proceeding to enforce or charge a violation of a provision of this Section 504, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs

28. Plaintiffs are the prevailing party in the BSEA matter to enforce rights under Section 504.

29. The attorneys' fees and costs incurred by plaintiffs are reasonable. The fees charged by plaintiffs' attorneys are based on rates prevailing in the community in which the action arose for the kind and quality of the services furnished.

30. Plaintiffs are entitled to an award of their attorneys' fees and costs incurred in the BSEA action.

WHEREFORE, the plaintiffs request this court to:

1. Take jurisdiction of this matter;

2. Award the plaintiffs their reasonable attorneys' fees, costs and expenses incurred relative to the administrative action before the BSEA;

3. Award the plaintiffs such attorneys' fees, costs and expenses as may be necessitated by this action; and

4. Grant such other relief as the court deems just and equitable.

Dated: 4/13/2005

Respectfully submitted,
JOHN DOE and JAMES DOE
By their attorney,

_____
Tim Sindelar
BBO #557273
BOWMAN, MOOS & HILTON
222 Third Street, #3220
Cambridge, MA 02142
(617) 494-8808